# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| KIMBERLY J. ROSA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:09CV868MLM |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of Michael J. Astrue, the Commissioner of Social Security ("Defendant") denying the applications for Social Security benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., and Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381 et seq, filed by Plaintiff Kimberly J. Rosa ("Plaintiff"). Plaintiff has filed a brief in support of her complaint. Doc. 15. Defendant has filed a brief in support of the answer. Doc. 20. The parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 8.

## I.
## PROCEDURAL HISTORY

Plaintiff filed applications for benefits on June 26, 2007, alleging a disability onset date of October 1, 2006. Tr. 68-72. Plaintiff's applications were denied, and she filed a request for a hearing before an administrative law judge ("ALJ"). Tr. 44-48, 50-51. On September 4, 2008, a hearing was held before an ALJ, who issued an decision denying Plaintiff's applications on November 7, 2008. Tr. 12-23. Plaintiff filed a Request for Review with the Appeals Council, which the Appeals Council

denied. Tr. 1-5, 7-11. As such, the decision of the ALJ stands as the final decision of the Commissioner.

## II.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities … ." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); Part 404, Subpart P, Appendix 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Fourth, the impairment must prevent claimant from doing past relevant work. 20 C.F.R. §§ 416.920(e), 404.1520(e). The burden rests with the claimant at this fourth step to establish his or her

Residual Functional Capacity ("RFC"). Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's residual functional capacity and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to produce evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC").

Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). In Bland v. Bowen, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. Cox, 495 F.3d at 617; Guillams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1994); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. Krogmeier, 294 F.3d at 1022 (internal citations omitted). See also Eichelberger, 390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001) (internal citations omitted).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

> (1) The findings of credibility made by the ALJ;
>
> (2) The education, background, work history, and age of the claimant;
>
> (3) The medical evidence given by the claimant's treating physicians;
>
> (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
>
> (5) The corroboration by third parties of the claimant's physical impairment;
>
> (6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and
>
> (7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

> (1) the claimant's daily activities;
>
> (2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) any precipitating or aggravating factors;

(4) the dosage, effectiveness, and side effects of any medication; and

(5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322. The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. Id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. Id.; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. Guillams, 393 F.3d at 801; Masterson v. Barnhart, 363 F.3d 731, 738 (8th Cir. 2004); Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. Robinson, 956 F.2d at 841; Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). The ALJ need only acknowledge and consider those factors. Id. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. Karlix v. Barnhart, 457

F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)). The Commissioner must first prove that the claimant retains the residual functional capacity to perform other kinds of work. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857. The Commissioner has to prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert may be used. An ALJ posing a hypothetical to a vocational expert is not required to include all of a plaintiff's limitations, but only those which he finds credible. Goff, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); Rautio, 862 F.2d at 180. Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell, 892 F.2d at 750.

## III.
## DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm his decision as long as there is substantial evidence in favor of the Commissioner's position. Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

The ALJ in the matter under consideration first noted that Plaintiff claimed she had severe impairments of headaches, stomach problems, degenerative disc disease, depression, anxiety, and a growth on her ovaries which affected her health. The ALJ found that Plaintiff's only severe impairment is degenerative disc disease; that she does not have an impairment which meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; that she can perform the full range of sedentary work; that her past relevant work as an office assistant in a real estate office does not require the performance of work-related activities precluded by her RFC; and that, therefore, Plaintiff is not disabled. Plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ failed to give proper weight to the opinion of Plaintiff's treating doctor, Tonya Little, M.D., regarding Plaintiff's residual functional capacity ("RFC"); because the ALJ failed to obtain the testimony from a vocational expert ("VE"); and because the ALJ failed to properly consider Plaintiff's pain.

**A.      The Opinion of Plaintiff's Treating Doctor:**

Plaintiff contends that the ALJ did not give proper weight Dr. Little's opinion, stated in a Medical Assessment Disability Claim Form (the "Form"), completed on August 27, 2008, that Plaintiff needs to be able to change positions every ten to fifteen minutes; that she cannot lift more than ten pounds; that she cannot push, pull, stoop, squat, or bend repetitively; and that Plaintiff's pain frequently interferes with her attention and concentration. Additionally, Dr. Little reported in the Form that Plaintiff has chronic back pain from degenerative disc disease of the lumbar spine, frequent neck pain and migraines from degenerative disc disease of the cervical spine, and weakness of the right quadriceps and hamstring due to atrophy; that Plaintiff's subjective complaints were reasonably consistent with the objective findings; that Plaintiff cannot perform sedentary work because she needs to be able to change positions every ten to fifteen minutes, cannot lift more than ten pounds, and

cannot push, pull, stoop, squat, or bend repetitively; and that Plaintiff's "pain levels become debilitating if she does any of the above activities [more than] 2 hrs daily on a repetitive basis." Tr. 543-44.

"It is the ALJ's function to resolve conflicts among the various treating and examining physicians." Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) (internal quotation marks omitted). The opinions and findings of the plaintiff's treating physician are entitled to "controlling weight" if that opinion is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'" Prosch v. Apfel, 201 F.3d 1010, 1012-13 (8th Cir. 2000) (quoting 20 C.F.R. § 404.1527(d)(2) (2000)). Indeed, if they are not controverted by substantial medical or other evidence, they are binding. Cunningham v. Apfel, 222 F.3d 496, 502 (8th Cir. 2000) (citing Ghant v. Bowen, 930 F.2d 633, 639 (8th Cir. 1991); Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998)). However, while the opinion of the treating physician should be given great weight, this is true only if the treating physician's opinion is based on sufficient medical data. Leckenby v. Astrue, 487 F.3d 626, 632 (8th Cir. 2007) (holding that a treating physician's opinion does not automatically control or obviate need to evaluate record as whole and upholding the ALJ's decision to discount the treating physician's medical-source statement where limitations were never mentioned in numerous treatment records or supported by any explanation); Chamberlain v. Shalala, 47 F.3d 1489, 1494 (8th Cir. 1995) (citing Matthews v. Bowen, 879 F.2d 422, 424 (8th Cir.1989) (holding that opinions of treating doctors are not conclusive in determining disability status and must be supported by medically acceptable clinical or diagnostic data); 20 C.F.R. § 404.1527(d)(3) (providing that more weight will be given to an opinion when a medical source presents relevant evidence, such as medical signs, in support of his or her opinion). See also Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006) (holding that where a treating physician's notes are

inconsistent with his or her RFC assessment, controlling weight is not given to the RFC assessment); Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (holding that a treating physician's opinion is giving controlling weight "if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence"). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001).

Where diagnoses of treating doctors are not supported by medically acceptable clinical and laboratory diagnostic techniques, the court need not accord such diagnoses great weight. Veal v. Bowen, 833 F.2d 693, 699 (7th Cir. 1987). An ALJ may "discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Prosch, 201 F.3d at 1013. See also Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006) (holding that an ALJ may give a treating doctor's opinion limited weight if it is inconsistent with the record).

A treating physician's checkmarks on a form are conclusory opinions which can be discounted if contradicted by other objective medical evidence. Stormo v. Barnhart, 377 F.3d 801, 805-06 (8th Cir. 2004); Hogan, 239 F.3d at 961; Social Security Ruling 96-2p, (July 2, 1996). A treating physician's opinion that a claimant is not able to return to work "involves an issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight." Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005). Moreover, a brief, conclusory letter from a treating physician stating that the applicant is disabled is not binding on the Secretary. Ward v. Heckler, 786 F.2d 844, 846 (8th Cir. 1986) (per curiam) ("Even statements made by a claimant's treating physician regarding the existence of a disability have been held to be properly

discounted in favor of the contrary medical opinion of a consulting physician where the treating physician's statements were conclusory in nature."). See also Hacker, 459 F.3d at 937 (holding that where a treating physician's notes are inconsistent with his or her RFC assessment, controlling weight should not be given to the RFC assessment); Chamberlain, 47 F.3d at 1494; Barrett v. Shalala, 38 F.3d 1019, 1023 (8th Cir. 1994) (citing Thomas v. Sullivan, 928 F.2d 255, 259 (8th Cir. 1991)); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984) (holding that the ALJ is not bound by conclusory statements of total disability by a treating physician where the ALJ has identified good reason for not accepting the treating physician's opinion, such as its not being supported by any detailed, clinical, diagnostic evidence). On the other hand, a treating physician's observations should not necessarily be treated as conclusory where the doctor had "numerous examinations and hospital visits" with a claimant. See Turpin v. Bowen, 813 F.2d 165, 171 (8th Cir. 1987).

Additionally, SSR 96-2p states, in its "Explanation of Terms," that it "is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record." 1996 WL 374188, *2 (S.S.A. July 2, 1996). Additionally, SSR 96-2p clarifies that 20 C.F.R. §§ 404.1527 and 416.927 require that the ALJ provide "good reasons in the notice of the determination or decision for the weight given to a treating source's medical opinion(s)." Id. at *5.

When considering the weight to be given the opinion of a treating doctor, the entire record must be evaluated as a whole. Wilson v. Apfel, 172 F.3d 539, 542 (8th Cir. 1999) (quoting Cruze v. Chater, 85 F.3d 1320, 1324-25 (8th Cir. 1996) ("Although a treating physician's opinion is generally entitled to substantial weight, such opinion does not automatically control, since the record must be evaluated as a whole."). "'It is the ALJ's function to resolve conflicts among the various treating and

examining physicians.'" Tindell v. Barnhart, 444 F.3d 1002, 1004 (8th Cir. 2006) (quoting

Vandenboom v. Barnhart, 421 F.3d 745, 749-50 (8th Cir. 2005) (internal marks omitted). An ALJ

is entitled to give less weight to the opinion of a treating doctor where the doctor's opinion is based

largely on the plaintiff's subjective complaints rather than on objective medical evidence. Kirby v.

Astrue, 500 F.3d 705, 709 (8th Cir. 2007) (citing Vandenboom, 421 F.3d at 749).

"Generally, the longer a treating source has treated [a claimant] and the more times [the

claimant has] been seen by a treating source, the more weight [the Commissioner] will give to the

source's medical opinion." 20 C.F.R. §§ 404.1527(d)(2)(i) & 416.927(d)(2)(i). See also Randolph

v. Barnhart, 386 F.3d 835, 840 (8th Cir. 2004) (holding that a doctor's opinion stated in a checklist

should not have been given controlling weight because the doctor had met with the plaintiff only three

times at the time he completed the form).

In Plaintiff's case, as stated above, after considering Plaintiff's allegations, the ALJ found that

the only severe impairment which Plaintiff has is degenerative disc disease and that Plaintiff has the

RFC to perform the full range of sedentary work.[1] Upon not giving controlling weight to Dr. Little's

_____

[1]        20 C.F.R. § 404.1567(a) defines sedentary work as follows: "Sedentary work involves
lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files,
ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain
amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if
walking and standing are required occasionally and other sedentary criteria are met." Indeed, SSR
85-15, 1985 WL 56857, at *5, states that "[w]here a person has some limitation in climbing and
balancing and it is the only limitation, it would not ordinarily have a significant impact on the broad
world of work. ... If a person can stoop occasionally (from very little up to one-third of the time) in
order to lift objects, the sedentary and light occupational base is virtually intact." The sitting
requirement for the full range of sedentary work "allows for normal breaks, including lunch, at two
hour intervals." Ellis v. Barnhart, 392 F.3d 988, 996 (8th Cir. 2005) (citing SSR 96-9p, 1996 WL
374185, at *6 (July 2, 1996)). Additionally the range of sedentary jobs requires a claimant "to be able
to walk or stand for approximately two hours out of an eight-hour day. The need to alternate between
sitting and standing more frequently than every two hours could significantly erode the occupational
base for a full range of unskilled sedentary work." Id. at 997 (citing 1996 WL 374185 at *7).
Moreover, SSR 96-9p requires that "the RFC assessment should include the frequency with which
an applicant needs to alternate between sitting and standing, and if the need exists, that vocational

opinion as stated on the Form, the ALJ considered the objective medical evidence, including Dr. Little's own treatment notes. In particular, the ALJ considered that an electrodiagnostic study of the lower extremities and spine performed on January 20, 2006, showed no evidence of motor neuropathy or radiculopathy, and that on January 31, 2006, it was reported that Plaintiff had normal gait and station. The ALJ further considered that it was reported on March 6, 2006, that Plaintiff's neck was supple. The court notes that on January 31 and March 6, 2006, upon Plaintiff's receiving injections of facet joints to treat back pain, it was reported that Plaintiff had "[n]early 80-90% reduction to SI joint symptomology with improvement in gait, reduction in compression pain, and SI side to side mobility improved." Tr. 221-24.

The ALJ considered that Plaintiff saw Dr. Little on May 22, 2006, at which time Plaintiff had "some swelling in her back" and that Dr. Little reported on this date that Plaintiff's *spine had "no tenderness"*; that she had limited range of motion in her back and extremities due to pain; and that she had *normal sensation*. The ALJ further considered a May 30, 2006 MRI report stating that "*mild spondylitic changes* effect the C5 interspace *without focal disc herniation or recess stenosis*." Tr. 20. The court notes that this MRI report also states that the exam showed "*no evidence of foraminal narrowing through out the cervical column*." Tr. 325. The ALJ also considered that a May 30, 2006 MRI report states that studies of the lumbar spine revealed flattening of the normal concave disc at L4. Tr. 20. The court notes that the MRI report regarding the lumbar spine examination states that

---

expert testimony may be more appropriate than the grids." Id. It also states that "a finding that an individual has the ability to do less than a full range of sedentary work does not necessarily equate with a decision of disabled."

the "*epidural spaces [were] preserved*" and that the "S1 nerve roots [were] of equal size and signal with the thecal sac midline." Tr. 326.

The ALJ also considered that Charles A. Wetherington, M.D., of the Microsurgery and Brain Research Institute, examined Plaintiff on June 6, 2006, and that Dr. Wetherington reported that Plaintiff "appeared to be in *good physical condition*"; that her *strength was 5/5*; that she had *intact sensation* and *negative straight leg raising* tests; that she had some midline lumbosacral tenderness with palpation of the lumbar spine; and that she had more significant tenderness with palpation over the SI joints. Tr. 21. The court notes that Dr. Wetherington also reported that Plaintiff complained of neck pain with numbness and tingling in both arms and hands and pain in the thoracic and lumbar spine; that review of Plaintiff's *MRIs* "reveal[ed] some *very mild degenerative changes* at C5-6" and "some *very mild degenerative changes* at L5-S1 with *no thecal sac and neural foraminal narrowing and compression*"; and that Dr. Wetherington reported that he did not "feel [Plaintiff] has a surgical lesion and surgical intervention would not offer relief." Tr. 321-22.

The ALJ considered that Dr. Little examined Plaintiff on June 6, 2007, at which time she reported that Plaintiff's *neck had no spasms and normal range of motion*; that Plaintiff's *back had no tenderness* and some spasm; that Plaintiff had negative straight leg raising; and that Plaintiff had *5/5 strength for her extremities and normal sensation*. Tr. 21.

The ALJ considered that Michael Boedefeld, M.D., of Pain Management Services, examined Plaintiff on June 13, 2006, and that Dr. Boedefeld reported on this date that Plaintiff's neck had *some limited range of motion*; that Plaintiff had *normal gait*; that she had pain with range of motion for her lumbar spine; that Plaintiff had *full range of motion for her extremities* and tenderness in her lumbar area; that Plaintiff's straight leg raising test was negative; and that Plaintiff had *intact sensation*. Tr. 21. The court notes that Dr. Boedefeld also reported that Plaintiff was alert and oriented to person,

place and time; that she was in *no acute distress*; that she did not exhibit any signs of undue depression, anxiety, or agitation; that his impression included cervical spondylosis at C5 and lumbar degenerative disc disease at L4-5 and L5-S1; that the plan was for Plaintiff to see an allergist because she appeared to have an allergy to steroid or local anesthetic; that if Plaintiff has no allergies she should consider injections; and that Plaintiff was to attend physical therapy and to try a TENS unit, as Plaintiff "seem[ed] to have good relief in the past." Tr. 367-68.

The court notes that Plaintiff saw Dr. Little on November 30, 2006, at which time Dr. Little reported that Plaintiff was "*doing well* except for difficulty with sleep maintenance"; that Plaintiff's vital signs were stable, her heart had a regular rate, her lungs were clear, her abdomen was soft, non-distended, and non-tender, her bowel sounds were normal, her extremities were without clubbing, cyanosis, or edema; that Plaintiff had hyperlipidemia; that Plaintiff should follow a low-fat diet and exercise. Tr. 341. Plaintiff saw Dr. Little again on June 6, 2007, on which date Dr. Little assessed Plaintiff with back pain and reported that she was to continue hydrocondone, was encouraged to do stretches three times a day with continued heat, ice, and massage, and was to return in three months. Tr. 342.

As considered by the ALJ, Plaintiff saw Dr. Little on August 28, 2007, on which date Dr. Little reported that Plaintiff had back spasm with *decreased range of motion*. Also, on this date, Dr. Little recommended that Plaintiff continue stretches regularly. Tr. 442. Records further reflect that Plaintiff saw Dr. Little on July 3, 2008, on which date Dr. Little reported that Plaintiff said she had increased back pain with radiation into both legs with numbness and tingling, that she had no difficulty in bladder or bowel control, and that she was "tolerating medications without side effects"; that Plaintiff smoked one pack of cigarettes a day; that *Plaintiff was "alert, well appearing, and in no distress"*; that Plaintiff's neck was supple; that Plaintiff's peripheral pulses were normal; that she

had no pedal edema, clubbing or cyanosis; that her right quadriceps and hamstrings were atrophic compared to the left; and that, in regard to her psychiatric condition, Plaintiff was *normal, alert, oriented, and had appropriate affect*. Tr. 430-31.

The ALJ considered Dr. Little's opinion, as stated in the August 27, 2008 Form, that Plaintiff could not perform sedentary work because of her limitations. The ALJ discredited Dr. Little's opinion and found that Plaintiff could perform the full range of sedentary work. First, consistent with the Regulations and case law, the ALJ considered that ordinarily, as Plaintiff's treating physician, Dr. Little's opinion should be given controlling weight, but that it does not automatically control. See Leckenby, 487 F.3d at 632; Hogan, 239 F.3d at 961; Prosch, 201 F.3d at 1012-13; Cunningham, 222 F.3d at 502. Second, upon determining that Dr. Little's opinion should not be given controlling weight, the ALJ discredited Plaintiff's allegations of pain as more fully set forth below.

Third, the ALJ considered reports of other doctors and test results which are inconsistent with Dr. Little's conclusion. See Cox, 471 F.3d at 907; Prosch, 201 F.3d at 1013. In particular, the ALJ considered that several examinations revealed that Plaintiff had "5/5 strength for her extremities or had normal gait or had both"; that diagnostic imaging reports reflected "only mild spondylitic changes of the C5 interspace without focal disc herniation or recess stenosis"; and that an electrodiagnostic study showed no evidence suggestive of motor neuropathy or radiculopathy. Tr. 21. Indeed, the January 2006 electrodiagnostic study showed no evidence of motor neuropathy; on January 31, 2006, it was reported that Plaintiff had normal gait; a May 2006 MRI showed "mild spondylitic changes" and no formal narrowing in the cervical column; a May 2006 lumbar spine MRI showed the epidural spaces were "well preserved"; Dr. Wetherington reported on June 6, 2006, that Plaintiff's strength was 5/5 and that she appeared to be in good physical condition; and Dr. Boedefeld reported in June 2006 that Plaintiff had normal gait, full range of motion in all extremities, negative leg raising, intact

sensation, and was in no acute distress. As considered by the ALJ, clinical and laboratory diagnostic techniques are inconsistent with Dr. Little's conclusion that Plaintiff cannot perform sedentary work. See Chamberlain, 47 F.3d at 1494; Hacker, 459 F.3d at 937; Reed, 399 F.3d at 920. Dr. Little's opinion is not well-supported by diagnostic techniques and is inconsistent with other substantial evidence on the record. See Prosch, 201 F.3d at 1012-13. In any case, Dr. Boedefeld and Dr. Wetherington are specialists, and, as such, the ALJ gave proper weight to their opinions. See Kelley v. Callahan, 133 F.3d 583, 588 (8th Cir. 1998) (holding that the Commissioner is encouraged to give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist).

Moreover, Dr. Little's treatment notes are inconsistent with her opinion as stated in the August 2008 Form. Dr. Little reported on June 6, 2007, that Plaintiff's back had no tenderness and some spasm and that she had 5/5 strength for her extremities and normal sensation. She also reported on August 15, 2006, that Plaintiff was doing well except for difficulty sleeping. As such, her statement that Plaintiff cannot perform even sedentary work is not controlling. See Hacker, 4459 F.3d at 937 (holding that a treating physician's opinion is not controlling where it is inconsistent with her own notes); Chamberlain, 47 F.3d at 1494; Barrett, 38 F.3d at 1023.

Additionally, Dr. Little reported in July 2008 that Plaintiff was tolerating her medications without side effects. Conditions which can be controlled by treatment are not disabling. See Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (holding that if an impairment can be controlled by treatment, it cannot be considered disabling); Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002); Murphy, 953 F.2d 383, 384 (8th Cir. 1992); Warford v. Bowen, 875 F.2d 671, 673 (8th Cir. 1989) (holding that a medical condition that can be controlled by treatment is not disabling); James, 870 F.2d at 450.

Upon discrediting Dr. Little's opinion that Plaintiff cannot perform sedentary work, consistent with the Regulations and case law, the ALJ considered the record as a whole. See Hogan, 230 F.3d at 961. Further, the ALJ resolved the conflicts between Dr. Little's opinion and the reports and records of other doctors of record. See Estes, 275 F.3d at 725. In any case, the ALJ was not bound by Dr. Little's conclusory statement that Plaintiff is unable to do even sedentary work as the ALJ identified good reasons for not accepting Dr. Little's conclusion. See SSR 96-2p; 20 C.F.R. § § 404.1527; Stormo, 377 F.3d at 805-06; Hogan, 239 F.3d at 961; King, 742 F.2d at 973. To the extent that Plaintiff argues that the ALJ engaged in "medical conjecture" upon discrediting Dr. Little opinion, the court finds that because the ALJ identified his reasons for doing so and because his decision in this regard is supported by substantial evidence on the record, it is apparent that the ALJ did not engage in medical conjecture. Although Plaintiff argues that, upon discrediting Dr. Little's opinion, the ALJ should not have considered medical evidence prior to Plaintiff's alleged onset date, an ALJ is "entitled to consider all of the evidence of record." Vandenboom v. Barnhart, 421 F.3d 745, 750 (8th Cir. 2005). Morever, "there is no valid reason to exclude consideration of medical records dated prior to [Plaintiff's] alleged date of onset." Id. The court finds, therefore, that the decision of the ALJ not to give controlling weight to the opinion of Dr. Little is supported by substantial evidence on the record as a whole and that the ALJ's decision in this regard is consistent with the case law and Regulations. Additionally, the court finds that the ALJ's finding that Plaintiff has the RFC to engage in the full range of sedentary work is supported by substantial evidence on the record.

**B.    Vocational Expert:**

Plaintiff contends that the ALJ should have obtained the testimony of a VE to determine the requirements of Plaintiff's past relevant work. Plaintiff also contends that the ALJ should have

obtained the testimony because she suffers from a non-exertional impairment. As stated above, the ALJ found that Plaintiff has the RFC to engage in the full range of sedentary work. The ALJ found that Plaintiff's past relevant work as an office assistant at a real estate office does not require the performance of work-related activities precluded by her RFC. Tr. 22. The ALJ further considered Plaintiff's stating that in her job as an office assistant she "walked and stood for only one hour each" and that she lifted less than ten pounds. The ALJ concluded that "[i]n comparing [Plaintiff's] residual functional capacity with the physical and mental demands of this work," Plaintiff "is able to perform it as actually performed." Tr. 22.

First, in regard to Plaintiff's allegation that she has a non-exertional impairment, and that, therefore, the ALJ should have sought the testimony of a VE, resort to the Medical-Vocational Guidelines is only appropriate when there are no non-exertional impairments that substantially limit the ability of a claimant to perform substantially gainful activity. Indeed, once a determination is made that a claimant cannot perform past relevant work, the burden shifts to the Commissioner to prove there is work in the economy that the claimant can perform. Robinson v. Sullivan, 956 F.2d 836, 839 (8th Cir. 1992). See also Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996) (holding that when complaints of pain are explicitly discredited by legally sufficient reasons, Guidelines may be used). If the claimant is found to have only exertional impairments, the Commissioner may meet this burden by referring to the Medical-Vocational Guidelines. See Robinson, 956 F.2d at 839. If, however, the claimant is also found to have non-exertional impairments that diminish the claimant's capacity to perform the full range of jobs listed in the Guidelines, the Commissioner must solicit testimony from a vocational expert to establish that there are jobs in the national economy that the claimant can perform. See id. On the other hand, "'an ALJ may use the Guidelines even though there is a nonexertional impairment if the ALJ finds, and the record supports the finding, that the

nonexertional impairment does not diminish the claimant's residual functional capacity to perform the full range of activities listed in the Guidelines.'" <u>Lucy v. Chater</u>, 113 F.3d 905, 908 (8th Cir. 1997) (quoting <u>Thompson v. Bowen</u>, 850 F.2d 346, 349-50 (8th Cir. 1988)). In the matter under consideration, the ALJ found that Plaintiff does not have any non-exertional impairments. The court has found that the ALJ's determination of Plaintiff's RFC and that she can engage in the full range of sedentary work is supported by substantial evidence. As such, the ALJ was not required to solicit the testimony of a VE because of Plaintiff's alleged non-exertional limitations. <u>See</u> <u>Reynolds</u>, 82 F.3d at 258.

20 C.F.R. § 1520 states, in relevant part:

(f) Your impairment(s) must prevent you from doing your past relevant work. If we cannot make a determination or decision at the first three steps of the sequential evaluation process, we will compare our residual functional capacity assessment, which we made under paragraph (e) of this section, with the physical and mental demands of your past relevant work. (See § 404.1560(b).) If you can still do this kind of work, we will find that you are not disabled.

The Eighth Circuit has commented that when determining whether a claimant can perform past relevant work, the following considerations are appropriate:

According to the Secretary's interpretation, sections 404.1520(e) and 416.920(e) require careful consideration of the interaction of the limiting effects of the person's impairment(s) and the physical and mental demands of his or her PRW to determine whether the individual can still do that work. ...

The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision. Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issues as clearly and explicitly as circumstances permit.

Sufficient documentation will be obtained to support the decision. Any case requiring consideration of PRW will contain enough information on past work to permit a decision as to the individual's ability to return to such past work....

Adequate documentation of past work includes factual information about those work demands which have a bearing on the medically established limitations. Detailed information about strength, endurance, manipulative ability, mental demands and other job requirements must be obtained as appropriate. This information will be derived from a detailed description of the work obtained from the claimant, employer, or other informed source....

Groeper v. Sullivan, 932 F.2d 1234, 1238 (8th Cir. 1991) (citing  S.S.R. No. 82-62, Soc. Sec. Rep. 809, 811-12 (West 1983)).

S.S.R. 82-62, requires that an ALJ has an obligation to "'fully investigate and make explicit findings as to the physical and mental demands of a claimant's past relevant work and to compare that with what the claimant herself is capable of doing before he determines that she is able to perform her past relevant work.'" Id. at 1238 (quoting Nimick v. Sec'y of Health and Human Servs., 887 F.2d 864, 866 (8th Cir. 1989)).  Moreover, where the record contains substantial evidence that claimant can perform past work, the ALJ's failure to develop past work record in full detail does not require remand. See Battles v. Sullivan, 902 F.2d 657, 659 (8th Cir. 1990).

"An ALJ's decision that a claimant can return to his past work must be based on more than conclusory statements. The ALJ must specifically set forth the claimant's limitations." Id.  Further, the ALJ must  determine how a claimant's limitations affect his or her  RFC.  Additionally, the ALJ must [] make explicit findings regarding the actual physical and mental demands of the claimant's past work. Then, the ALJ should compare the claimant's residual functional capacity with the actual demands of the past work to determine whether the claimant is capable of performing the relevant tasks." Id. (citing  Kirby, 923 F.2d at 1326-27).

 Additionally, 20 C.F.R. § 404.1560(b) states, in relevant part, regarding past relevant work:

(2) Determining whether you can do your past relevant work. We will ask you for information about work you have done in the past. We may also ask other people who know about your work. (See § 404.1565(b).) We *may* use the services of vocational experts or vocational specialists, or other resources, such as the "Dictionary of Occupational Titles" and its companion volumes and supplements, published by the

Department of Labor, to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity. A vocational expert or specialist *may* offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy. *Such evidence may be helpful in supplementing or evaluating the accuracy of the claimant's description of his past work.* In addition, a vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy.

(3) If you can do your past relevant work. If we find that you have the residual functional capacity to do your past relevant work, we will determine that you can still do your past work and are not disabled. We will not consider your vocational factors of age, education, and work experience or whether your past relevant work exists in significant numbers in the national economy. ...

The court has found above that the ALJ's determination of Plaintiff's RFC is supported by substantial evidence. The ALJ further determined that Plaintiff's past work as an office assistant was past relevant work.  Despite Plaintiff's assertion that the ALJ should have obtained the testimony of a VE to determine the requirements of her past relevant work, the Regulations do not require an ALJ to obtain the testimony of a VE in this regard, although such testimony may be obtained where it is necessary.  See 20 C.F.R. § 404.1560(b)(2).  Consistent with the Regulations and case law, the ALJ considered Plaintiff's testimony regarding the demands of her work as an office assistant, specifically, as she performed this job.  See 20 C.F.R. § 404.1560(b).  The court finds that the record clearly and explicitly sets forth the requirements of Plaintiff's past relevant work. See Groeper, 932 F.2d at 1238. The ALJ made explicit findings as to the physical demands of Plaintiff's past relevant work and compared these demands with Plaintiff's capabilities.  See S.S. R. 82-62; Groeper, 932 F.2d at 1238. Only then did the ALJ find that Plaintiff is able to perform her past relevant work.  See  Groeper, 932 F.2d at 1238; Battles, 902 F.2d at 659.  As such, the court finds that the ALJ was not required to

obtain the testimony of a vocational expert and that the ALJ's finding that Plaintiff can perform her past relevant work as an office assistant is based on substantial evidence and is consistent with the Regulations and case law.

**C.     Plaintiff's Pain and Credibility:**

As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole and a court cannot substitute its judgment for that of the ALJ.  Guillams, 393 F.3d at 801; Hutsell, 892 F.2d at 750;  Benskin, 830 F.2d at 882. To the extent that the ALJ did not specifically cite Polaski, case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, as also more fully set forth above, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence. Randolph v. Barnhart, 386 F.3d 835, 842 (8th Cir. 2004); Wheeler v. Apfel, 224 F.3d 891, 896 n.3 (8th Cir. 2000); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995).  Additionally, an ALJ need not methodically discuss each Polaski factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make. See Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered."); Strongson, 361 F.3d at 1072; Brown v. Chater, 87 F. 3d 963, 966 (8th Cir. 1996). In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001).  "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003). See also Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006).

As considered by the ALJ, Plaintiff in the matter under consideration testified that she has constant pain, which is aggravated by any work. For the following reasons, the court finds that the reasons offered by the ALJ in support of his credibility determination are based on substantial evidence.

First, the ALJ considered that Plaintiff said that she cleaned, did laundry, and worked in the garden. The ALJ found that these activities are not "totally consistent with [Plaintiff's] allegations." The ALJ also considered the testimony of Plaintiff's daughter in regard to Plaintiff's daily activities. Tr. 20. While the undersigned appreciates that a claimant need not be bedridden before he can be determined to be disabled, Plaintiff's daily activities can nonetheless be seen as inconsistent with his subjective complaints of a disabling impairment and may be considered in judging the credibility of complaints. Eichelberger, 390 F.3d at 590 (holding that the ALJ properly considered that the plaintiff watched television, read, drove, and attended church upon concluding that subjective complaints of pain were not credible); Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001); Onstead, 962 F.2d at 805; Murphy v. Sullivan, 953 F.2d 383, 386 (8th Cir. 1992); Benskin, 830 F.2d at 883; Bolton v. Bowen, 814 F.2d 536, 538 (8th Cir. 1987). Indeed, the Eighth Circuit holds that allegations of disabling "pain may be discredited by evidence of daily activities inconsistent with such allegations." Davis v. Apfel, 239 F.3d 962, 967 (8th Cir. 2001) (citing Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987)). "Inconsistencies between [a claimant's] subjective complaints and [his] activities diminish [his] credibility." Goff, 421 F.3d at 792 (citing Riggins v. Apfel, 177 F.3d 689, 692 (8th Cir. 1999)). See also Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001); Nguyen v. Chater, 75 F.3d 429, 439-31 (8th Cir. 1996) (holding that a claimant's daily activities, including visiting neighbors, cooking, doing laundry, and attending church, were incompatible with disabling pain and affirming denial of benefits at the second step of analysis).

An ALJ, however, is not required to believe all of a claimant's assertions concerning her daily activities. Johnson v. Chater, 87 F.3d 1015, 1018 (8th Cir. 1996). "[S]ubjective complaints of pain cannot be disregarded solely because there is no supporting medical evidence, but they can be discounted if the ALJ finds inconsistencies in the record as a whole." Zeiler v. Barnhart, 384 F.3d 932, 936 (8th Cir. 2004) (citing Johnson v. Chater, 108 F.3d 942, 947 (8th Cir. 1997)). A record, such as that in the matter under consideration, which does not reflect physician imposed restrictions suggests that a claimant's restrictions in daily activities are self-imposed rather than by medical necessity. See Zeiler, 384 F.3d at 936 ("[T]here is no medical evidence supporting [the claimant's] claim that she needs to lie down during the day."); Fredrickson v. Barnhart, 359 F.3d 972, 977 n.2 (8th Cir. 2004) ("There is no evidence in the record that [the claimant] complained of severe pain to his physicians or that they prescribed that he elevate his foot or lie down daily."). As such, the court finds that the ALJ's consideration of Plaintiff's daily activities is based on substantial evidence on the record and that it is consistent with the Regulations and case law. The court finds, therefore, that the ALJ properly considered Plaintiff's daily activities upon choosing to discredit her complaints of debilitating pain. The court further finds that substantial evidence supports the ALJ's decision in this regard.

Second, the ALJ considered that the Social Security Administration interviewer observed that Plaintiff stood and walked around three to four times during the interview and that Plaintiff walked slowly and appeared to be in pain. The ALJ considered that the observations of the interviewer supported Plaintiff's claims. The court finds that the ALJ properly considered the observations of the interviewer and that his decision, in this regard, is supported by substantial evidence.

Third, the ALJ considered that Plaintiff took prescription medications, which included hydrocondone[2]; that she underwent physical therapy; that she received lumbar facet joint injections; and that she received "excellent pain control" from the injections. Medical records from January and March 2006 reflect that, after joint injections, Plaintiff had improved gait, reduction in compression pain, and improved mobility. Additionally, Dr. Little reported in July 2008, that Plaintiff was tolerating medications without side effects. Conditions which can be controlled by treatment are not disabling. See Harris v. Heckler, 756 F.2d 431, 435-36 n.2 (6th Cir. 1985). See also Murphy, 953 F.2d 383, 384 (8th Cir. 1992); Warford v. Bowen, 875 F.2d 671, 673 (8th Cir. 1989) (holding that a medical condition that can be controlled by treatment is not disabling); James for James v. Bowen, 870 F.2d 448, 450 (8th Cir. 1989). Additionally, the absence of side effects from medication is a proper factor to consider when determining whether a plaintiff's complaints of disabling pain are credible. See Depover v. Barnhart, 349 F.3d 563, 566 (8th Cir. 2003) ("We [] think that it was reasonable for the ALJ to consider the fact that no medical records during this time period mention [the claimant's] having side effects from any medication."); Richmond v. Shalala, 23 F.3d 1441, 1444 (8th Cir. 1994). The court finds that the ALJ properly considered Plaintiff's medications and that the record is supported by substantial evidence in this regard.

Fourth, the ALJ considered that although Plaintiff sought treatment for back pain, she did not do so at a frequency indicative of her allegations. Tr. 21. Seeking limited medical treatment is inconsistent with claims of disabling pain. Edwards v. Barnhart, 314 F.3d 964, 967 (8th Cir. 2003) ("[T]he ALJ concluded, and we agree, that if her pain was as severe as she alleges, [Plaintiff] would have sought regular medical treatment."); Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997)

---

[2]    To the extent Plaintiff argues that the ALJ did not consider that she took hydrocondone, Plaintiff is mistaken in this regard, as the ALJ specifically considered her use of prescription pain medication, as discussed above. Tr. 20.

("[Claimant's] failure to seek medical assistance for her alleged physical and mental impairments contradicts her subjective complaints of disabling conditions and supports the ALJ's decision to deny benefits."); Nelson v. Sullivan, 946 F.2d 1314, 1317 (8th Cir. 1991); James for James v. Bowen, 870 F.2d 448, 450 (8th Cir. 1989). In some circumstances, failure to seek medical treatment based on inadequate financial resources may explain a plaintiff's failure. See Johnson v. Bowen, 866 F.2d 274, 275 (8th Cir. 1989). In this matter, however, Plaintiff does not allege inadequate resources prevented her from seeking and/or receiving medical treatment. Moreover, even assuming that Plaintiff's financial resources were insufficient, failure to seek treatment offered to indigents detracts from a claim that a claimant did not seek medical treatment because of inadequate financial resources. See Riggins, 177 F.3d at 693. As such, the court finds that the ALJ's consideration of the infrequency of Plaintiff's receiving treatment is supported by substantial evidence and that it is consistent with the Regulations and case law.

Fifth, the ALJ considered that medical examinations, "as a whole, failed to show signs indicative of [Plaintiff's] allegations" of disabling pain. In particular, the ALJ considered that it was reported that Plaintiff had 5/5 strength for her extremities or that she had a normal gait or had both. Tr. 21. As further discussed above, objective medical evidence, including test results, showed only mild spondylitic changes and no evidence of motor neuropathy or radiculopathy. Further, Dr. Wetherington reported that Plaintiff had intact sensation and negative straight leg raising. In fact, Dr. Wetherington reported that Plaintiff's MRIs showed *very* mild changes, as opposed to merely mild changes. A lack of objective medical evidence detracts from Plaintiff's subjective complaints. While an ALJ may not reject a claimant's subjective complaints based solely on the lack of medical evidence to fully corroborate the complaint, Jones v. Chater, 86 F.3d 823, 826 (8th Cir. 1996), the absence of an objective medical basis to support the degree of Plaintiff's subjective complaints is an important

factor in evaluating the credibility of the testimony and the complaints. <u>See</u> <u>Russell v. Sullivan</u>, 950 F.2d 542, 545 (8th Cir. 1991); <u>Edwards v. Sec'y of Health & Human Servs.</u>, 809 F.2d 506, 508 (8th Cir. 1987). The court finds that the ALJ's consideration of the medical evidence upon discrediting Plaintiff's complaint of disabling pain is supported by substantial evidence and is consistent with the Regulations and case law.

In conclusion, the court finds that the ALJ's conclusions regarding Plaintiff's pain are based on substantial evidence and that they are consistent with the case law and Regulations.

**IV.**
**CONCLUSION**

The court finds that the ALJ's decision is supported by substantial evidence contained in the record as a whole, and that, therefore, the Commissioner's decision should be affirmed.

**ACCORDINGLY,**

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in her Complaint and Brief in Support of Complaint is **DENIED;** Docs. 1, 15.

**IT IS FINALLY ORDERED** that a separate judgement be entered in the instant cause of action.

<div style="margin-left:40%">

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE
</div>

Dated this 28th day of April, 2010.